# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

---

TYLER BUERGER,

     Plaintiff,

  v.

CITY OF OAK CREEK, WISCONSIN;
ANDREW VICKERS, individually and in his
official capacity as City Administrator,

     Defendants.

Case No. 2:26-cv-1310

---

## COMPLAINT

---

Plaintiff Tyler Buerger ("Buerger" or "Plaintiff"), by his undersigned counsel, brings this Complaint against Defendants City of Oak Creek, Wisconsin (the "City") and Andrew Vickers, ("Vickers" and collectively, "Defendants"), and alleges as follows:

### NATURE OF THE CASE

1. This is an action for interference and retaliation in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. (the "FMLA").

2. Buerger is a long-tenured public works professional for the City of Oak Creek. In early 2026, his eleven-year-old son was diagnosed with serious health conditions requiring intensive outpatient treatment and ongoing daily therapeutic support at school. The City approved Buerger for intermittent FMLA leave to care for his son.

3. Buerger used his approved leave exactly as authorized. In response, Defendants pressured him to curtail his leave, subjected him to workplace rumors and complaints that he was "never at work" and "doesn't do his job," interrogated him about his leave arrangements, and—

four months into his approved leave period—stripped him of all supervisory responsibilities, publicly installed a subordinate in his place, and relegated him to an undefined "administrative detail." The City's own Administrator conceded that Buerger violated no policy and that the complaints against him were "gossip."

4. Defendants' conduct interfered with, restrained, and denied Buerger's exercise of his FMLA rights and discriminated and retaliated against him for exercising those rights, in violation of 29 U.S.C. § 2615.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2), because Plaintiff's claims arise under the FMLA, a federal statute.

6. Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District and all events giving rise to the claims occurred in this District, in Milwaukee County, Wisconsin.

## JURY DEMAND

7. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

## PARTIES

8. Plaintiff Tyler Buerger is an adult resident of the State of Wisconsin. At all relevant times, Buerger was employed by the City of Oak Creek in its Department of Public Works ("DPW") as Assistant Director of Public Works and was an "eligible employee" within the meaning of 29 U.S.C. § 2611(2), having been employed by the City for at least twelve months and having worked at least 1,250 hours in the twelve months preceding his leave.

9.      Defendant City of Oak Creek is a Wisconsin municipal corporation with its principal offices at 8040 South 6th Street, Oak Creek, Wisconsin 53154. The City is a "public agency" and an "employer" within the meaning of 29 U.S.C. §§ 203(x) and 2611(4)(A)(iii), and employed fifty or more employees within seventy-five miles of Plaintiff's worksite at all relevant times.

10.      Defendant Andrew Vickers is an adult resident of Wisconsin and at all relevant times was the City Administrator of the City of Oak Creek. Mr. Vickers acted directly and indirectly in the interest of the City with respect to Plaintiff's employment, including exercising control over the terms and conditions of Plaintiff's employment and making the decisions challenged herein, and is an "employer" within the meaning of 29 U.S.C. § 2611(4)(A)(ii)(I). He is sued in his individual and official capacities.

## OPERATIVE FACTS

### A.      *Buerger's Employment and His Son's Serious Health Condition*

11.      Buerger has been employed by the City's Department of Public Works for 21 years, rising through the ranks to a leadership position in which he oversaw DPW operations and supervised the Department's foremen and staff.

12.      Prior to the events described in this Complaint, Buerger performed his duties capably and in good standing. As Defendant Vickers would later acknowledge, Buerger "knows the most about the inner workings of the department."

13.      On or about December 10, 2025, Buerger's eleven-year-old son, W.B., was diagnosed by his treating physician with a serious health condition. The physician implemented a safety plan, prescribed medication, and advised that W.B. might need intensive outpatient or partial hospitalization treatment.

14.     W.B.'s condition constitutes a "serious health condition" within the meaning of 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.115, involving continuing treatment by a health care provider, ongoing medication management, and a regimen of continuing supervised treatment.

15.     In January 2026, W.B. was enrolled in an intensive outpatient therapy program at a healthcare facility licensed by the State of Wisconsin. With the express permission of his direct supervisor, Matthew J. Trebatoski, Buerger worked remotely from the treatment facility two to three days per week while accompanying his son, and continued to perform his job duties, including rate adjustments in the Department's work-order system, completion of 2025 and 2026 winter operations reporting, and day-to-day assignment of service requests to foremen.

### B. The City Approves Intermittent FMLA Leave

16.     On or about February 9, 2026, Buerger requested family and medical leave to care for his son, and his need for leave commenced on that date.

17.     On or about February 18, 2026, the City received Buerger's supporting medical certification.

18.     On March 5, 2026, the City, through Human Resources Director Toni Vanderboom, formally approved Buerger's request. The City issued a Department of Labor Form WH-381 Notice of Eligibility and Form WH-382 Designation Notice approving leave to care for a child under age 18 with a serious health condition, designating the leave as both federal FMLA and Wisconsin FMLA leave, for the period February 9, 2026 through August 9, 2026.

19.     Consistent with the medical certification, the City approved intermittent leave of two to eight hours per episode, three to five times per week.

20. From February through June 2026, Buerger used his approved intermittent leave to attend his son's medical appointments and daily "school supportive sessions"—therapeutic support required for W.B. to attend school—while continuing to work every scheduled workday, frequently working from 7:00 a.m. until his son's sessions began, returning to work afterward, and at times working remotely. Buerger's usage remained at all times within the frequency and duration certified by his son's healthcare provider and approved by the City.

### C. Defendants Pressure Buerger Over His Leave and Foster a Hostile Atmosphere

21. In or around March 2026, Defendants pressured Buerger to "be at work more," referring to physical presence in the DPW building, notwithstanding that Buerger's absences were FMLA-protected and within his approved intermittent schedule.

22. Because Defendants pressured him to increase his physical presence, and because W.B. could not safely be left unsupervised, Buerger obtained Trebatoski's permission to bring W.B. to the workplace after school on limited occasions between February and April 2026, during which time W.B. remained with Buerger.

23. During this period, DPW staff circulated complaints and rumors that Buerger was "never at work," that "he's always gone," and that he "doesn't do his job" and "tells other people to handle it for him"—statements directed at absences that were, in fact, FMLA-protected leave. Upon information and belief, these complaints were communicated to City management and to a member of the City's Common Council.

24. Defendants took no action to correct the rumors, protect the confidentiality of Buerger's leave, or inform staff that his absences were lawful and approved, despite Buerger raising the issue directly with management.

### D. Defendants Strip Buerger of His Position Because of His FMLA Leave

25. On June 4, 2026, Vanderboom summoned Buerger to a meeting regarding a complaint received from an alderperson, which she stated originated with DPW staff. Buerger was questioned about whether he worked from home, whether his son had been at the workplace, and whether he knew the "morale" of his staff. Buerger explained that his limited interaction with staff was a function of his approved intermittent FMLA leave.

26. Five days later, on June 9, 2026, Defendant Vickers informed Buerger that, due to the "water temperature at DPW," Buerger was being removed from oversight of DPW operations, stripped of all supervisory responsibilities, and placed on an undefined "administrative detail." A subordinate foreman, Kevin Archambeau, was installed as Interim Director in his place.

27. When Buerger asked what "administrative detail" meant, Defendant Vickers admitted he did not know. When Buerger asked what the complaints against him were, Vickers offered only that Buerger had a "negative demeanor" and was "unapproachable"—to which Buerger responded that he could hardly be "unapproachable" when his time in the office was limited by his FMLA leave.

28. Defendant Vickers announced the removal of Buerger's responsibilities to DPW supervisors, and word of his demotion spread through the Department and beyond, including a rumor that a citywide email had announced that Buerger "had his role removed and all responsibilities."

29. Later on June 9, 2026, Buerger met with Vanderboom, reported that he believed a hostile work environment was being created, and arranged to document all FMLA and PTO usage directly with Human Resources to protect himself.

6

30. On June 16, 2026, Defendant Vickers met with Buerger again. During the meeting, Vickers admitted that Buerger had not violated any policy; described the staff complaints as "gossip" that he could not "pinpoint" to anything concrete; acknowledged that the complainants came from "a certain demographic" of staff; and faulted Buerger only for how his caregiving accommodations had been requested and handled—that is, for the process by which Buerger sought and used protected leave. Vickers also faulted Trebatoski for failing to notify Human Resources or the City Administrator of the remote-work arrangement Trebatoski had approved.

31. Buerger's removal from operations, loss of all supervisory authority, public replacement by a subordinate, and reassignment to undefined "administrative detail" duties (including tasks such as sidewalk inspection ordinarily performed by other departments) constitute materially adverse employment actions and a *de facto* demotion.

32. The temporal proximity between Buerger's ongoing use of approved FMLA leave, the staff complaints expressly directed at his FMLA-protected absences, the June 4, 2026, interrogation, and the June 9, 2026, removal of his duties—together with Defendant Vickers's admission that no policy was violated—demonstrates that Defendants' actions were motivated by Buerger's exercise of his FMLA rights.

33. As a result of Defendants' conduct, Buerger has suffered harm including diminished job responsibilities and professional standing, damage to his reputation, emotional distress, and significant stress affecting his health and his family, including his son, who has blamed himself for what happened to his father at work.

# COUNT I
## FMLA Interference
## 29 U.S.C. § 2615(a)(1)
## (Against All Defendants)

34. As and for a first Count, Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

35. Plaintiff was an eligible employee entitled to FMLA leave to care for his minor son, who suffered from a serious health condition, and the City approved that leave.

36. Defendants interfered with, restrained, and denied Plaintiff's exercise of, and attempt to exercise, his FMLA rights, including by: (a) pressuring Plaintiff to reduce his use of approved intermittent leave and to be physically present at work during protected leave periods; (b) permitting and failing to correct a campaign of complaints and rumors targeting Plaintiff's protected absences, thereby discouraging his use of leave; (c) interrogating Plaintiff about his leave arrangements; (d) failing to maintain the confidentiality of Plaintiff's leave and medical information; and (e) stripping Plaintiff of his position and responsibilities during his approved leave period, thereby denying him the benefits and protections of the FMLA, including the right to job restoration under 29 U.S.C. § 2614(a) and the right to be free from discouragement in the use of leave under 29 C.F.R. § 825.220(b).

37. Defendants' violations were willful, or at minimum not in good faith, and Defendants lacked reasonable grounds to believe their conduct complied with the FMLA.\

38. As a direct and proximate result, Plaintiff has suffered and continues to suffer damages.

## COUNT II
### FMLA Retaliation and Discrimination
### 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c)
### (Against All Defendants)

39.     As and for a second Count, Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

40.     Plaintiff engaged in statutorily protected activity by requesting, being approved for, and using intermittent FMLA leave to care for his son, and by opposing practices made unlawful by the FMLA, including reporting to Human Resources on June 9, 2026 his good-faith belief that a hostile work environment was being created in response to his leave.

41.     Defendants took materially adverse actions against Plaintiff because of his protected activity, including removing him from oversight of DPW operations, stripping him of all supervisory responsibilities, publicly installing a subordinate in his place, relegating him to undefined "administrative detail" duties, and damaging his professional reputation.

42.     A causal connection exists between Plaintiff's protected activity and Defendants' adverse actions, as shown by, among other things: the complaints' explicit focus on Plaintiff's FMLA-protected absences; the close temporal proximity between Plaintiff's leave usage, the June 4, 2026 interrogation, and the June 9, 2026 demotion; Defendant Vickers's admission that Plaintiff violated no policy and that the complaints were "gossip"; and Vickers's statement faulting only the handling of Plaintiff's accommodation requests.

43.     Defendants' violations were willful, or at minimum not in good faith, and Defendants lacked reasonable grounds to believe their conduct complied with the FMLA.

44.     As a direct and proximate result, Plaintiff has suffered and continues to suffer damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Tyler Buerger respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award the following relief:

a. A declaration that Defendants' conduct violated the FMLA, 29 U.S.C. § 2615;

b. An injunction ordering Defendants to restore Plaintiff to his former position with all supervisory duties, authority, and responsibilities, or to an equivalent position, and to cease all interference with and retaliation for his use of FMLA leave;

c. Damages for all wages, salary, employment benefits, and other compensation denied or lost by reason of Defendants' violations, or, in the alternative, actual monetary losses sustained as a direct result of the violations, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i);

d. Interest on the foregoing amounts pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii);

e. Liquidated damages in an amount equal to the sum of the foregoing, pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

f. Equitable relief as appropriate, including promotion, reinstatement, and front pay, pursuant to 29 U.S.C. § 2617(a)(1)(B);

g. Reasonable attorneys' fees, expert witness fees, and costs of this action pursuant to 29 U.S.C. § 2617(a)(3); and

h. Such other and further relief as the Court deems just and proper.

Dated this 28th day of July, 2026.

Respectfully submitted,

*Electronically signed by Alan C. Olson*
Alan C. Olson, SBN: 1008953

Nicholas O. Yurk, SBN 1095278
Attorneys for Plaintiff
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI 53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: AOlson@EmployeeAdvocates.com